ROBERT LAKE *v*. STATE OF INDIANA.

[No. 770S162. Filed October 22, 1971. Rehearing denied December 15, 1971.]

William C. Erbecker, of Indianapolis, for appellant.

Theodore L. Sendak, Attorney General, Robert F. Colker, Deputy Attorney General, for appellee.

GIVAN, J.—Appellant was charged by an indictment with the crime of accessory before the fact of robbery. The indictment reads as follows:

> "The Grand Jury of the County of Miami do present upon their oath that on or about the 30th day of January, 1968, in the County of Miami and the State of Indiana one Orlester Beverly did then and there unlawfully, feloniously and forceably and by violence and putting one Margaret Copeland, in fear, rob, take and steal from the person of the said Margaret Copeland, nine Hundred and Seventeen Dollars, then and there belonging to the said Margaret Copeland, and being then and there contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State of Indiana. And the said Grand Jurors do further present and charge that Robert (R.L.) Lake before the commiting of the felony aforesaid, towit: ON the 29th day of January, 1968 and the 30th day of January, 1968, at and in the County aforesaid, did then and there unlawfully and feloniously counsel, encourage, and command the said Orlester Beverly to do and commit the said felony in the manner and form aforesaid; and so the Grand Jurors upon their oaths aforesaid, do say and charge that the said Robert (R.L.) Lake did commit the crime aforesaid in the manner and form aforesaid contrary to the form of the statute in such cases made and provided against the peace and dignity of the State of Indiana."

The record discloses the following:

On the 30th day of January, 1968, Marie Lewis, Orlester Beverly and Paul Irby went to the home of Mrs. Margaret Copeland in Peru, Indiana. Mrs. Lewis knocked on the door and when Mrs. Copeland answered, the two men forced their way into the home. While they were in the process of binding and robbing Mrs. Copeland, Mr. Copeland, hearing the commotion, slipped out of the house undetected by the robbers

and summoned police, who apprehended the robbers during the commission of the crime.

Mrs. Lewis testified that she and the two men, Irby and Beverly, drove to Peru from South Bend. Upon arriving in Peru they met the appellant, Robert Lake, and discussed a plan to rob a supermarket, but Lake stated that it was too late and that he had something else in mind.

The three men and Mrs. Lewis then drove to a supermarket where Mrs. Lewis was directed to buy some tape. After deciding that it was too late to rob the supermarket, they decided to go to the house of the people who owned the store (the Copeland residence). The appellant, Lake, showed the other three where the house was located. During this time they were riding in the appellant's car. They then returned to the car which Mrs. Lewis and the two men had driven from South Bend and returned to the Copeland home, the appellant driving his car and Irby, Beverly and Mrs. Lewis riding in their car. When they arrived back at the Copeland home, the appellant continued on in his car and the other three stopped and committed the robbery above described.

Orlester Beverly testified that only he, Paul Irby and Mrs. Lewis were involved. He explained his testimony before the grand jury involving the appellant by saying that it was "the last straw" in attempting to gain leniency for himself.

Appellant first claims the trial court erred in overruling a motion to quash the indictment alleging that the indictment does not state an offense with sufficient certainty. With this we cannot agree. The language of the indictment above quoted could leave no doubt in the mind of the appellant as to the nature of the charge against him. The indictment is based upon two statutes. Burns Ind. Stat., 1956 Repl., § 9-102 reads as follows:

"Every person who shall aid or abet in the commission of a felony, or who shall counsel, encourage, hire, command, or otherwise procure a felony to be committed, may be charged by indictment, or affidavit, tried and convicted in

the same manner as if he were a principal, either before or after the principal offender is charged, indicted or convicted; and, upon such conviction he shall suffer the same punishment and penalties as are prescribed by law for the punishment of the principal."

And Burns Ind. Stat., 1956 Repl., § 10-4101 reads as follows:

"Whoever takes from the person of another any article of value by violence or by putting in fear, is guilty of robbery, and on conviction shall be imprisoned not less than ten [10] years nor more than twenty-five [25] years, and be disfranchised and rendered incapable of holding any office of trust or profit for any determinate period. Whoever inflicts any wound or other physical injury upon any person with any firearm, dirk, stiletto, bludgeon, billy, club, blackjack, or any other deadly or dangerous weapon or instrument while engaged in the commission of a robbery, or while attempting to commit a robbery, shall, upon conviction, be imprisoned in the state prison for life."

We hold that the trial court did not err in overruling appellant's motion to quash the indictment.

Appellant next contends the trial court erred in overruling his "verified motion to quash and/or dismiss the entire panel and venire." Appellant claims that he was prejudiced because he is a negro. That Miami County has approximately 10 to 12% negro population; that there was not a single member of the negro race on the entire jury panel. The mere fact that no negro happened to be on the panel does not of itself establish that members of the negro race were systematically excluded from jury service in Miami County. *Atkins* v. *Texas* (1945), 325 U. S. 398, 89 L. Ed. 1692, 65 S. Ct. 1276. At pages 403 and 404 the Supreme Court in the *Akins* case stated:

". . . . The mere fact of inequality in the number selected does not in itself show discrimination. A purpose to discriminate must be present which may be proven by systematic exclusion of eligible jurymen of the proscribed race or by unequal application of the law to such an extent as to show intentional discrimination."

In the case at bar the appellant made no effort to show any systematic exclusion of negroes or any other group for that matter from jury service in Miami County. This Court will not presume prejudice merely because a particular panel did not happen to include members of a particular minority group. *Shuemak* v. *State* (1970), 254 Ind. 117, 258 N. E. 2d 158, 21 Ind. Dec. 296.

Appellant also states that negroes are excluded from jury service by reason of the fact that the selection of jurors is made from the names of persons appearing on the latest tax duplicates and tax schedules in the county, and that persons who do not own real estate or an automobile or other vehicle or certain types of boats, farm equipment or animals do not appear on the tax schedules and are thus excluded and that a large number of negroes fall within that category. We find no merit to this argument. The legislature is faced with the problem of providing for the selection of jurors in a manner calculated to insure impartial selection and at the same time there must be a practical manner to ascertain the names and addresses of the persons to be summoned. Since the case at bar was tried this Court has held that in a county where it has been demonstrated that the tax lists are no longer representative of the population, the trial court may order the prospective jurors summoned from the lists of eligible voters. *State ex rel. Brune* v. *Vanderburgh Circuit Court* (1971), 255 Ind. 505, 265 N. E. 2d 524, 24 Ind. Dec. 279. There is no evidence that the condition was such in April, 1970, at the time this case was tried that the jury did not represent a cross-section of the population of Miami County. It is noted that the statute which was largely responsible for the ruling in the *Brune* case did not go into effect until January 1, 1971.

Appellant next claims the trial court erred in refusing to allow him to testify that he was elsewhere when the alleged crime was committed. The appellant filed no alibi notice in

this case as required by Burns Ind. Stat., 1956 Repl., § 9-1631 nor did he during the trial attempt to show good cause for his failure to file such an alibi notice as provided in § 9-1633 of the statute.

The question of whether or not a defendant should be permitted to give testimony of alibi evidence even though he has filed no alibi notice as required by statute, has been raised in several jurisdictions. The following cases hold that the defendant has the right to so testify even though he has failed to file alibi notice in accordance with the statute: *People* v. *Rakiec* (1942), 289 N. Y. 306, 45 N. E. 2d 812; *State* v. *Stump* (1963), 254 Iowa 1181, 119 N. W. 2d 210; and *State* v. *Post* (1963), 255 Iowa 573, 123 N. W. 2d 11. The following cases hold that a notice of alibi statute applies to the defendant and that he will not be permitted to testify concerning alibi unless a prior notice has been filed pursuant to the statute: *State* v. *Rider* (1965), 194 Kan. 398, 399 P. 2d 564; *State* v. *Taylor* (1967), 198 Kan. 290, 424 P. 2d 612; and *State ex rel. Simos* v. *Burke* (1968), 41 Wis. 2d 129, 163 N. W. 2d 177.

Upon examination of the above cases we take the position that the better reasoning is found in the latter cases. This proposition is well stated in *Simos, supra,* where the court at page 180 in the N. W. Reporter states:

". . . . If a criminal trial is viewed as a draw poker game with all cards to be held close to the chest until played, this can be seen as requiring a tipping of one's hand in advance. However, if a criminal trial is viewed as a search for the truth, with every protection provided for investigation and preparation and to insure against the conviction of the innocent, notice requirements forward the purpose of the process. Viewed thusly, the notice of alibi statute is not only justified as protecting the state from fraudulent, surprise defenses presented without time for investigation of their merits, but also as consistent with 'The modern trend in discovery * * * to broaden access to material facts and reduce belated surprise.' (Citing authorities.) We find no infringement or abridgement of the defendant's Fifth Amendment rights in the notice of alibi statute."

We, therefore, hold the trial court did not err in excluding evidence of appellant's alibi during the alleged commission of the crime. *Lamar* v. *State* (1964), 245 Ind. 104, 195 N. E. 2d 98, 2 Ind. Dec. 518.

Appellant next argues that there was insufficient evidence to sustain his conviction. With this we disagree. An examination of the record in this case discloses ample evidence to support the allegations of the indictment. The facts of this case were clearly sufficient to support the finding of the jury that the appellant was guilty of being an accessory before the crime of robbery as charged. The fact that one of the participants in the crime implicated the appellant before the grand jury and at the trial stated the appellant was not involved was merely evidence to be weighed by the jury together with other evidence of appellant's involvement. This Court has repeatedly stated it will not weigh conflicting evidence. *Douglas* v. *State* (1970), 254 Ind. 324, 259 N. E. 2d 691, 22 Ind. Dec. 41.

Appellant next alleges error in the giving of court's final instruction No. 5 which reads as follows:

"It is also the law that activity to countenance and support the doing of a criminal act by another is to encourage it, within the meaning of the crime of accessory before the fact."

Appellant argues that it was error to give this instruction because there was no probative evidence that appellant had anything to do with the robbery charged. As above pointed out, we hold that there was ample evidence to support the allegations of the indictment. The court's instruction No. 5 correctly states the law. We hold the court did not err in giving its instruction No. 5.

Appellant next alleges he was denied a fair and impartial trial before an unbiased and unprejudiced jury. He argues the jury was prejudiced because Captain Wilson, a member of the Peru Police Department, gave evidence which tended

to show that he was out "to get" the appellant. We see nothing in the testimony of Captain Wilson other than a recitation of facts ascertained in the course of his investigation. By their very nature these facts, of course, are to the detriment of the appellant. The fact that Captain Wilson was thus convinced that the appellant should be arrested for the crime does not indicate a prejudice which would invalidate the proceedings before the jury.

Appellant also argues that testimony of Marie Lewis was unbelievable, and that the appellant was also prejudiced when the State attempted to impeach its Witness Beverly. As we have pointed out, whether or not the jury believed the testimony of Marie Lewis was entirely their prerogative. This evidence will not be weighed by this Court. As to the state's examination of the Witness Beverly this was the way the prosecutor presented the evidence which had been submitted to the grand jury by Orlester Beverly demonstrating that it was contrary to the statements made during the trial. This was proper procedure on the part of the prosecuting attorney. *Antrobus* v. *State* (1970), 253 Ind. 420, 254 N. E. 2d 873, 20 Ind. Dec. 164.

The crux of appellant's argument on this proposition appears to be that he cannot have a fair trial as the witnesses who testified against him are prejudiced against him. This is hardly a sound argument. It is not the witnesses against a criminal defendant who must be unbiased and unprejudiced, but it is the jury or the judge who is to hear the facts and make the determination of guilt or innocence who must be unbiased and unprejudiced. Constitution of Indiana, Art. 1, § 13. One can hardly expect the victims of the crime, the arresting officers, or any others for that matter, who might have information concerning the facts of the case, to be unbiased and unprejudiced. If such were the requirements for a fair trial, it would hardly be possible to bring to trial any person accused of crime. The record in this case does not disclose any evidence of bias and prejudice or im-

proper conduct on the part of the judge or jury. We are not concerned with bias and prejudice of any witness. This is a matter for the jury in weighing the evidence. *Hartford* v. *State* (1884), 96 Ind. 461, 467; I. L. E., *Witnesses,* § 171 and §§ 211 to 217.

The trial court is, therefore, affirmed.

Arterburn, C.J., and Hunter and Prentice, JJ., concur; DeBruler, J., dissents with opinion.

## DISSENTING OPINION

DEBRULER, J.—Appellant made a Motion to Quash the venire in which he alleged that the jury commissioners illegally and deliberately omitted the names of Negroes in selecting the jury panel in violation of the Indiana statutory procedure set out in I.C. 1971, 33-4-5-2, being Burns § 4-7104, and of appellant's right to be tried by a jury of his peers as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Art. 1, § 13 of the Indiana Constitution. The appellant's prayer for relief was as follows:

> "WHEREFORE, the defendant respectfully prays the Court for the following relief:
> "(a) That the Court forthwith entertain this motion prior to the voir dire herein; and
> "(b) *That the Court permit the introduction of testimony in support of the aforesaid allegations; and*
> "(c) That the Court grant such other further, proper and complete relief in the premises as justice may require." (Emphasis added.)

Appellee made no response to this motion and the trial court overruled it without hearing.

The issue is not whether the appellant has alleged facts in his motion which if true would prove a systematic exclusion of Negroes, but whether appellant *should have had an opportunity to introduce evidence to show such a systematic exclusion.* It is clear that if he could make such a showing it would

require a reversal in this case. *Brewer* v. *State* (1969), 253 Ind. 154, 252 N. E. 2d 429. The trial court refused to even let appellant try to prove his allegations. The fact that Miami County has 36,000 people, 10-12% Negro and no Negroes were on the panel does not by itself prove systematic exclusion but coupled with appellant's allegation of illegality and his request for a hearing it is sufficient to compel the trial court to at least hold a hearing. This is especially true in light of the fact that the circuit court judge appoints the jury commissioners and instructs them concerning their duties. I.C. 1971, 33-4-5-1, being Burns § 4-7101. When an array is challenged as being deliberately unconstitutional the court should be anxious to show that its instructions to the jury commissioners were lawful and that those commissioners followed the instructions and the statutes. *Brewer* v. *State, supra,* (DeBruler, J., dissenting).

NOTE.—Reported in 274 N. E. 2d 249.