WILLIAM J. BOWEN *v.* STATE OF INDIANA.

[No. 1274S249. Filed October 2, 1975.]

*C. Jerome Smith, Smith and Granack,* of Hammond, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Alden,* Deputy Attorney General, *John Halcarz,* Lake County Prosecutor's Office, for appellee.

HUNTER, J.—Appellant Bowen was charged with the kidnapping of Rebecca Westcott and Krystal Colclosure. In a second count, he was charged with the sodomy of each. The jury returned its verdict of guilty on all charges. Appellant

was sentenced to life imprisonment for each conviction of kidnapping and for two to fourteen years for each conviction of sodomy.

## I.

Appellant asserts that the evidence was insufficient to sustain the verdicts. The evidence most favorable to the state and the reasonable inferences therefrom show that the victims, ages ten and seven, were walking to a park when a man approached them and offered them two dollars to deliver some newspapers. When they accepted his offer, he returned with his automobile. After driving for some distance, the driver stopped the vehicle in an alley and ordered the victims to take down their pants. Rebecca was then instructed to perform a fellatio upon the driver. Then Krystal was required to do the same act. Finally, Rebecca was ordered to repeat the act. At the conclusion of these acts, the victims were told to get out of the car and take their clothes with them.

The crime of kidnapping may be accomplished by force, fraud or decoy. Ind. Code § 35-1-55-1, Burns § 10-2901 (1956 Repl.). The kidnappings for which appellant was convicted were obviously of the latter variety. The girls were not forced to enter appellant's vehicle, but did so voluntarily in reliance upon appellant's business offer. The offer was a ruse, and the law regards the victim's transportation under such circumstances as illicit. *Shipman* v. *State*, (1962) 243 Ind. 245, 183 N.E.2d 823, *cert. denied* 371 U.S. 958, 83 S.Ct. 515, 9 L.Ed.2d 504. There was sufficient evidence to sustain appellant's conviction for kidnapping.

Ind. Code § 35-1-89-1, Burns § 10-4221 (Supp. 1974), defines sodomy as "the abominable and detestable crime against nature with mankind or beast." In *Estes* v. *State*, (1946) 244 Ind. 691, 195 N.E.2d 471, we stated that the form of sodomy here charged required proof of copulation of the male organ with the mouth of another. While Krystal did not testify,

the testimony of Rebecca is sufficient in all respects to show that both victims were required to place their mouths upon appellant's penis.

## II.

### A. *Pre-trial Identification Procedures.*

Appellant contends that the trial court erred in denying the motion to suppress Rebecca Westcott's in-court identification of him, as her attacker, claiming that such identification was solely the product of tainted pre-trial identification procedures. The day after the occurrence, the police came to Rebecca's home to show her some photographs. Rebecca had described her assailant to her mother and from such description her mother selected several photographs which the mother thought fit the description. Rebecca rejected her mother's selections. Rebecca also rejected all the other photographs she was shown, noting only that the eyes of certain of the pictures resembled those of the defendant, which she described as bulging out from the side. Appellant claims that actions of Rebecca's mother were so impermissibly suggestive as to lead to his misidentification by Rebecca. On the contrary, Rebecca refused to be swayed by her mother's suggestion and stated that the pictures proffered by her mother (which apparently were not pictures of the appellant) were not of her abductor.

About three weeks later, the Highland police came to Rebecca's home and told her they had a man in custody (actually, the appellant was in the custody of the Gary Police Department, apparently on other charges.) She was taken to a room in the Gary Police Department and "asked to look around the room." In an adjoining room, she saw the appellant, seated next to another man whom she apparently knew was a detective. She also was shown photographs of the appellant only, although the record is confused as to whether this was before or after the show-up. This action by the authorities in singling out the appellant as the perpetrator of the crime is shoddy

and deplorable police work. Such identification procedures are undeniably "impermissibly suggestive" within the guidelines of *Simmons* v. *U.S.,* (1968) 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247.

About a week later, Rebecca attended a lineup at the Highland Police Station. From a lineup of four men, she selected the appellant as her abductor. Appellant maintains that the lineup was impermissibly suggestive because it lasted for only five minutes. With regard to lineups, we believe that suggestivity may be evidenced by overt words or actions; for example, where the police ask the viewer if the third person from the left isn't the one who committed the act. Improper suggestivity may also be evidenced by the composition of the lineup itself, as where the members of the lineup are all of one race and the accused is of another. It might be possible to set up a lineup where the viewer would observe via closed-circuit television while the camera panned the line in stroboscopic fashion, so that a great likelihood of misidentification would exist. Such was not the lineup here conducted, and in the absence of other proof of suggestivity as outlined above, we see nothing inherently violative of due process in a lineup which takes but five minutes.

### B. *Independent Basis.*

When an improper pre-trial identification has occurred, as it did in this case at the Gary Police Station, the witness may, nevertheless, identify the accused in court if there exists a substantial independent basis for such identification. In *Neil* v. *Biggers,* (1972) 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, the U.S. Supreme Court stated that ". . . [T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time

between the crime and the confrontation." *See also Swope* v. *State,* (1975) 263 Ind. 148, 325 N.E.2d 193; *Vicory* v. *State,* (1974) 262 Ind. 376, 315 N.E.2d 715.

The events under review in this case transpired on a Saturday morning, and Rebecca Westcott first observed the appellant at a distance of no more than five feet when he approached her and her companion about delivering the papers. When she entered appellant's vehicle, she sat next to him on the front seat with Krystal sitting by the door. The drive to the sodomy scene took about ten or fifteen minutes, and Rebecca recognized her grandmother's and her aunt's house as they drove by. She was able to identify the vehicle as bluish-gray Oldsmobile. She further stated that "It had a paper rose on the right visor. It had three stickers on the windshield. One was a moose head, and one was a flag and one was part of a star." Rebecca was in the car after it stopped for approximately ten to fifteen minutes, during which time her ability to observe appellant's facial features was periodically curtailed, for reasons stated above. Nevertheless, she was able to give a detailed description of appellant's clothing and his general physical appearance, including several missing teeth. On both direct and cross-examination, Rebecca remained steadfast in her identification of the appellant as the man who abducted her. Under all the circumstances, we believe the identification was reliable and rests upon a basis sufficiently independent of the impermissible show-up conducted at the Gary Police Department. The trial court properly denied appellant's motion to suppress.

## III.

Appellant assigns as error the overruling of his motion in limine which allowed the state to introduce evidence of a prior act of sodomy allegedly committed by the appellant with one Tracy Oglesby. Appellant objected to such testimony on the ground that it was prejudicial and would inflame the jury. On appeal, appellant argues

that the evidence was further inadmissible for the reason that prior acts are admissible only when based upon a conviction. While the conviction may be introduced, see *Gilman* v. *State,* (1972) 258 Ind. 556, 282 N.E.2d 816, it is not a prerequisite, see *Austin* v. *State,* (1974) 262 Ind. 529, 319 N.E.2d 130. The act itself tends to show a depraved sexual instinct and is admissible subject only to exclusion for remoteness. As recently stated in *Pieper* v. *State,* (1975) 262 Ind. 580, 321 N.E.2d 196, 199, "the length of time between the two acts would only affect the weight the jury would assign to the evidence as a support for the prosecutrix's testimony." In *Pieper,* the interval between the two acts was forty-five days. Here, the prior act took place on February 28, 1973, and the act for which appellant was committed occurred on June 23, 1973. We cannot say the prior act should have been excluded as a matter of law as being too remote, and it was otherwise admissible. See *Kerlin* v. *State,* (1970) 255 Ind. 420, 265 N.E.2d 22. Appellant's motion in limine was properly overruled.

## IV.

Appellant moved to take the depositions of the state's witnesses pursuant to Ind. Code § 35-1-31-8, Burns § 9-1610 (1956 Repl.). The docket entry indicates that the motion was granted, ". . . provided, however, that in view of the tender age of the complaining witness herein; that the taking of the depositions of said witness will be done without the presence of the defendant." The record contains no objection to this limitation on the discovery granted. Nevertheless, appellant's motion to correct errors, without support, suggests that "The Court erred in not allowing the Defendant to be present at the taking of the deposition of the complaining witnesses."

Although not well briefed, appellant's argument in support of his contention appears to be twofold. First, appellant im-

pliedly argues that the restriction violated his right of confrontation under Article 1, section 13, of the Indiana Constitution. That provision of our constitution which guarantees an accused the right "to meet the witnesses face to face," is applicable to those criminal proceedings in which the accused may be condemned to suffer grievous loss of either his liberty or his property. The taking of a deposition cannot directly have such consequences upon an accused, although a trial may; *see Kerlin* v. *State, supra, Denton* v. *State,* (1965) 246 Ind. 155, 203 N.E.2d 539, and a parole revocation proceeding may, *see Russell* v. *Douthitt,* (1973) 261 Ind. 428, 304 N.E.2d 793. Hence, there was no violation of Article 1, section 13 in denying the appellant the right to be present at the depositions.

Secondly, appellant asserts, apparently as a corollary to the right to counsel, the right of counsel to have the defendant present for consultation during the taking of the deposition. Appellant argues that the denial of the defendant's presence "reduces the purpose of the deposition to a mere recitation of facts and certainly handcuffs Defendant's attorney for the true purpose of the deposition, i.e. intensive discovery." Appellant further asserts that without his presence, his attorney was required to operate in a "factual vacuum," citing *Johns* v. *State,* (1968) 251 Ind. 172, 240 N.E.2d 60. *Johns* involved the failure of the state to comply, without any showing of cause, with an order requiring it to provide the defendant with the names of *all* witnesses the state intended to rely upon in the prosecution of its case. The furnishing of the names of a few of the state's witnesses, but not all, was held to be a violation of due process, for it placed the defendant and his attorney in a "factual vacuum" vis-a-vis the probable testimony of the undisclosed witnesses. There is no doubt that had appellant been permitted to attend the deposition, some line of inquiry not developed by counsel might have come to appellant's mind, so that he could suggest that counsel pursue it, or counsel might have conferred with the defendant

on particular points. But we must conclude that such restriction on the scope of the discovery granted appellant is *de minimis*, and not of the same caliber as that in *Johns*. Appellant has never maintained that he wished to conduct the deposition himself, unaided by counsel. Nor does the record suggest any shortcomings in the product procured by his counsel. The deposition was referred to several times on the cross-examination of Rebecca Westcott for impeachment purposes. Under the circumstances, the trial court's conditioning of the discovery it granted was reasonable and not an abuse of its discretion.

## V.

Appellant asserts for the first time in his appellate brief that the sodomy statute under which he was tried is unconstitutionally void for vagueness. A challenge to the constitutionality of a statute is not a task to be engaged in lightly. The guidelines for such a challenge and the reasons therefor were recently reviewed in depth in *Bd. of Comm'rs. v. Kokomo City Plan Comm'n.*, (1975) 263 Ind. 282, 330, N.E.2d 92. Preferably, such challenge should be commenced at the trial level and not presented initially on appeal. The reason for such requirement is amplified by examining the argument in appellant's brief which concludes, without citing a case, that the statute is unconstitutional. With regard to the merits, the issue has long been resolved against appellant's position. *Miller v. State*, (1971) 256 Ind. 296, 268 N.E.2d 299; *Phillips v. State*, (1967) 248 Ind. 150, 222 N.E.2d 821; *Estes v. State*, (1964) 244 Ind. 691, 195 N.E.2d 471.

## VI.

Finally, appellant asserts that he was denied effective assistance of counsel because of counsel's failure to file notice of alibi. Appellant concedes that failure to file the notice of alibi which precluded him from calling other witnesses would be harmless error, if appellant himself had been per-

mitted to testify to the alibi. The question of whether a defendant is permitted to testify to an alibi, even though he failed to give the notice required by statute (Ind. Code § 35-5-1-1 to 3, Burns § 9-1631 to 1633 (Supp. 1974), was answered negatively in *Lake* v. *State,* (1971) 257 Ind. 264, 274 N.E.2d 249. In *Lake,* we recognized that the notice statute served the truth-finding process by protecting the state from easily fabricated eleventh-hour defenses, and by enabling the state to make adequate trial preparation. When such statutes also place reciprocal burdens of disclosure upon the state, as ours does, they are not violative of the defendant's due process rights. *Wardius* v. *Oregon,* (1973) 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82; *Williams* v. *Florida,* (1970) 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446.

Appellant maintains that failure to file the notice does not fall within the category of trial strategy or trial tactics committed to the informed judgment of counsel. We do not agree. See *Jennings* v. *State,* (1973) 156 Ind. App. 640, 297 N.E.2d 909, 912. Even so, appellant urges that counsel's statement, to the effect that he could not remember whether he filed the notice or not, indicates a careless and perfunctory representation which made appellant's trial a mockery of justice. It is a rare occasion when a single omission or commission by counsel will be so grievous as to deny the defendant a fair trial. *Payne* v. *State,* (1973) 261 Ind. 221, 301 N.E.2d 514; *Haddock* v. *State,* (1973) 260 Ind. 593, 298 N.E.2d 418. Any error in counsel's trial preparation by failing to file the notice pales upon slightest inspection of the record in this matter. It shows a number of important pre-trial motions were filed in appellant's behalf. It shows that counsel was successful in obtaining a grant of a motion for pre-trial discovery allowing the deposition of the prosecutrix. It shows that counsel was alert at trial and that he interposed several timely objections. Our system of justice guarantees an accused *effective* representation by counsel, whether retained or appointed. There is no guarantee that such repre-

sentation, if unsuccessful, will result in a new trial being granted. We hold that appellant was effectively represented by counsel.

For all the foregoing reasons, the judgment of the trial court is affirmed.

Givan, C.J., and Arterburn, J., concur; DeBruler, J., concurs with opinion in which Prentice, J., concurs.

### CONCURRING OPINION

DeBruler, J.—At trial the accused took the witness stand and, upon questioning by his counsel, sought to testify to facts and events which the trial court construed to be evidence of alibi. The prosecutor objected to this testimony on the ground that no notice of alibi had been filed in accordance with the alibi statute. Defense counsel argued that the objection should be overruled because the evidence that was being offered was not evidence of alibi. Upon consideration of the argument, the trial court sustained the objection, and the accused was not permitted to give this disputed testimony. The correctness of this ruling is not challenged in this appeal. However, in my judgment, the legal position taken by defense counsel at the time of this argument provides an adequate basis for our determination that he was not ineffective in his representation. In the judgment of defense counsel, no notice of alibi was necessary because the testimony would not directly put the accused in a place other than the place of the offense at the critical time. The record provides support for his judgment. The excluded testimony was that, at the time of the offense, the accused was accompanied by one Bonnie Bentkowski. Bonnie Bentkowski was not mentioned by the victims of the alleged offense at trial. Whether this was evidence of alibi at all is arguable, and therefore, like the majority, I conclude that there was no denial here of the effective assistance of counsel.

The majority opinion is underpinned in part by the holding in *Lake* v. *State,* (1971) 257 Ind. 264, 274 N.E.2d 249. In

that case, this Court held that, if no statutory notice of alibi is given, the accused's own testimony constitutionally may be excluded at trial if such testimony would establish an alibi. I dissented in that case on other grounds and would now register my dissent on this additional ground. The personal right of the accused in a criminal case to testify and to be represented by counsel is guaranteed by the Sixth Amendment to the United States Constitution and Art. 1, § 13, of the Indiana Constitution. These personal rights are held ransom by a statute, the purpose of which is to protect the State from facing surprise defenses. Such need of the State surely exists, but it is amply satisfied by limiting the exclusionary rule of the statute to alibi witnesses other than the accused. If, as in the case at bar, the accused should choose to offer his own alibi evidence as the lone evidence of alibi in the case, the State should be permitted a continuance to meet the situation. Surprise testimony of this sort by the accused is seldom overwhelming. Since a continuance is a suitable remedy, the exclusionary sanction is an unjustified and overbroad intrusion upon the constitutional right of the accused to testify and be represented by counsel. In *Shelton* v. *Tucker,* (1960) 364 U.S. 479, 81 S.Ct. 247, 5 L.E.2d 231, the principle applicable here was stated:

> "In a series of decisions this Court has held that, even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved. The breadth of legislative abridgement must be viewed in the light of less drastic means for achieving the same basic purpose." 364 U.S. at 448 (Footnotes omitted.) See also: *State ex rel. Mavity* v. *Tyndall,* (1947) 225 Ind. 360, 74 N.E.2d 914.

Prentice, J., concurs.

NOTE.—Reported at 334 N.E.2d 691.