

**FILED**

Aug 09 2017, 6:02 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

William W. Gooden
Mt. Vernon, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

State of Indiana,

*Appellant-Plaintiff,*

v.

Delbert McKinney,

*Appellee-Defendant.*

August 9, 2017

Court of Appeals Case No.
65A05-1611-CR-2624

Appeal from the Posey Circuit
Court

The Honorable James M.
Redwine, Judge

Trial Court Cause No.
65C01-1602-F1-72

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Plaintiff, State of Indiana (State), appeals the trial court's denial of its motion to exclude Appellee-Defendant, Delbert McKinney (McKinney), during the victim's deposition; and its motion to have the victim testify via closed circuit television at McKinney's trial.

We reverse and remand.

# ISSUES

The State presents two issues on interlocutory appeal, which we restate as follows:

(1) Whether the trial court abused its discretion in denying the State's motion to exclude McKinney's presence during the victim's deposition; and

(2) Whether the trial court abused its discretion in denying the State's motion to have the victim testify via closed circuit television during McKinney's trial.

# FACTS AND PROCEDURAL HISTORY

On February 8, 2016, the State filed an Information, charging McKinney with child molesting, a Class A felony, Ind. Code § 35-42-4-3 (a)(1); child molesting, a Class C felony, I.C. § 35-42-4-3(b); child molesting, a Level 1 felony, I.C. § 35-42-4-3(a); and child molesting, a Level 4 felony, I.C. § 35-42-4-3(b). The alleged victim in McKinney's child molesting offenses was K.N., born in February of 2008.

On September 6, 2016, the State filed two motions: a motion to exclude McKinney's presence during K.N.'s deposition; and a motion to have K.N. testify via closed circuit television during McKinney's jury trial. On September 19, 2016, the trial court conducted a hearing on the State's motions, during which the trial court heard testimony from Dr. Shannon Jones (Dr. Jones), a psychologist, and Kayce Clevenger (Clevenger), a psychiatric social worker.

Dr. Jones, who was also K.N.'s treating physician, testified that in May 2016, eight-year-old K.N. became a resident of Evansville Psychiatric Children's Center, a State-operated facility that serves children from ages five to thirteen "having significant mental health issues." (Transcript Vol. II, p. 7). Dr. Jones testified that during the course of K.N.'s treatment, she diagnosed K.N. with "post[-]traumatic stress disorder, oppositional defiant disorder, and attention deficit hyperactivity disorder." (Tr. Vol. II, p. 8). Dr. Jones indicated that K.N.'s post-traumatic stress disorder (PTSD) diagnosis may have resulted from the various traumatic events that K.N. had endured in her lifetime. Specifically, Dr. Jones stated that K.N. had been "neglected, physically abused, sexually abused, and exposed to violence from adults." (Tr. Vol. II, p. 9). Dr. Jones added that K.N. was developmentally delayed, and noted that K.N.'s emotional maturity was that of a "toddler or preschooler." (Tr. Vol. II, p. 11).

At issue at the hearing was whether K.N. would suffer serious emotional harm if required to testify in McKinney's presence, and whether she would be able to effectively narrate the alleged abuse. Dr. Jones testified that having to testify in front of McKinney would present a substantial likelihood of emotional harm to

K.N. Dr. Jones indicated that there is a "decreased likelihood" of K.N. being able to communicate to the jury in the presence of McKinney. (Tr. Vol. II, p. 10). Dr. Jones added, "[I]f [K.N.] is in front of a bunch of people . . . she will be overwhelmed by anxiety." (Tr. Vol. II, p. 10). Dr. Jones explained that during stressful events, K.N. "tends to retreat, hide, get silent. If she is pushed further, she gets disagreeable. She starts to act out or act in a negative way, and she can eventually become aggressive." (Tr. Vol. II, p. 10). Dr. Jones specified that it would be less stressful for K.N. to testify via "closed circuit TV than it would be in open court." (Tr. Vol. II, p. 12). On cross-examination, Dr. Jones was asked to compare the two venues, the courtroom and closed circuit television, and give an analysis, on a scale of one to ten, with ten being the most stressful and one being the least stressful venue for K.N. Dr. Jones stated that it would be difficult to give an analysis on a scale of one to ten; rather she explained that "it would be a lot easier to accurately describe the relative levels of stress. The least stressful is not talking about it at all. The most stressful is talking about it in open court." (Tr. Vol. II, p. 24). Dr. Jones indicated that seeing McKinney in person would be "more traumatic" for K.N. than seeing him on a television screen. (Tr. Vol. II, p. 33).

[8] Clevenger, a psychiatric social worker and K.N.'s counselor at Evansville Psychiatric Children's Center, testified that since May 2016, she had been seeing K.N. for individual therapy at least once a week. When asked whether it would be less stressful for K.N. to see McKinney on a television screen, Clevenger stated that "[I]t may be a little bit less stressful, but it will still be very

stressful for [K.N.]" (Tr. Vol. II, p. 36). Clevenger similarly stated that K.N. did not react very well to stressful situations and indicated that K.N. becomes very aggressive. Clevenger added that if K.N. was confronted with the stress of facing a courtroom full of jurors, she "would likely react very negatively. She would [] probably yell, scream, try to get out of here as much as possible. She would probably be aggressive to whomever is closest to her by hitting, kicking . . ." (Tr. Vol. II, p. 36). Clevenger indicated that although K.N. would be stressed testifying in both venues, either the courtroom or by closed circuit television, she indicated that the stress on K.N. would be "significantly less" by closed circuit. (Tr. Vol. II, p. 41). Additionally, Clevenger testified that if K.N. testified in open court, it may cause lasting emotional harm on her. Clevenger emphasized that regardless of the venue, it would be "very traumatic for [K.N.] to see [McKinney]," and more particularly, "it will be extremely traumatic for [K.N.] to be in the same room" as McKinney. (Tr. Vol. II, p. 41).

[9]     At the close of the evidence, the trial court denied the State's motion to exclude McKinney from K.N.'s deposition. In allowing McKinney's attendance at K.N.'s deposition, the trial court imposed safeguarding measures. Specifically, the trial court directed McKinney to sit ten feet away from K.N. at the deposition table; and that an officer, of the State's choosing, should be present during the taking of the deposition to ensure that there are no "untoward actions or statements" by McKinney. (Tr. Vol. II, p. 56). Finally, the trial court stated that "should there be any effort by [] McKinney to interfere with, intimidate, stare down, comment, do anything except be present and observe

and listen, then the deposition will be terminated immediately." (Tr. Vol. II, p. 56).

[10] Also, the trial court denied the State's motion to have K.N. testify via closed circuit. In denying the State's motion, the trial court stated:

> As to the closed circuit, I think the testimony is this little girl is going to be stressed out no matter what we do, and we all feel bad about that. But from the testimony of the experts, there is very little difference in stress to her whether [] McKinney is present in the [c]ourtroom or she sees him on TV, and she has got to see him on TV. The statute requires that. So, since there is very little difference, I am trying to weigh his right to a fair trial *vis-a-vis* any harm to [K.N.]. I don't think we are saving the child at all based upon the testimony of the experts. So I am going to deny the request for closed circuit testimony, and I have set up ground rules for the deposition.

(Tr. Vol. II, p. 57).

[11] On October 18, 2016, the State requested the trial court to certify its Order for interlocutory appeal, which was granted on November 3, 2016. On December 30, 2016, this court accepted jurisdiction over the interlocutory appeal. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Attendance at Deposition*

[12] The State first claims that the trial court abused its discretion in denying its motion to exclude McKinney from K.N.'s deposition. The Sixth Amendment to the United States Constitution, made applicable to the States via the

Fourteenth Amendment, provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." "A witness's testimony against a defendant is thus inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354 (2004), *cert. denied*. Similarly, Article 1, Section 13 of the Indiana Constitution provides, in part, that: "In all criminal prosecutions, the accused shall have the right to . . . meet the witnesses face to face . . . ." Our supreme court has held that "Indiana's confrontation right contains both the right to cross-examination and the right to meet the witnesses face to face." *Brady v. State*, 575 N.E.2d 981, 987 (Ind. 1991). "Criminal defendants generally have no constitutional right to attend depositions." *State v. Owings*, 622 N.E.2d 948, 951 (Ind. 1993). However, depositions taken in the absence of defendants may not be admissible if the deponent is later unavailable for trial. *Miller v. State*, 517 N.E.2d 64, 71-73 (Ind. 1987).

[13] A trial court has broad discretion with regard to rulings on discovery matters based upon its duties to promote discovery of the truth and to guide and control the proceedings. *Miller v. State*, 825 N.E.2d 884, 888 (Ind. Ct. App. 2005), *trans. denied*. "Therefore, such rulings will be overturned only for an abuse of discretion. An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before the court." *Id.* (citation omitted). We may affirm the trial court's ruling if it is sustainable on

any legal basis in the record, even though this was not the reason enunciated by the trial court. *See Benham v. State*, 637 N.E.2d 133 (Ind. 1994).

[14] On appeal, the State argues that McKinney's confrontation rights would not be violated if the deposition is conducted in his absence. In support of its position, the State relies on *Jones v. State*, 445 N.E.2d 98, 99 (Ind. 1983), and *Bowen v. State*, 334 N.E.2d 691 (Ind. 1975). In *Jones*, a child molesting case, the supreme court held that the deposition of a small child could be conducted without the defendant being present. *Jones*, 445 N.E.2d at 100. In *Bowen*, the defendant sought to depose the State's witnesses before his trial for kidnapping and sodomizing two children, ages seven and ten. *Bowen*, 334 N.E.2d at 691. The supreme court held that the refusal to permit the defendant to be present at the taking of a deposition did not deny him his right of confrontation guaranteed by the Indiana Constitution. *Id*. The supreme court additionally stated that the right of face-to-face confrontation is applicable to those criminal proceedings in which the accused may be condemned to suffer grievous loss of either his liberty or his property. *Id*. at 695. The taking of a deposition to discover information cannot directly have such consequences upon an accused, although a trial or a parole revocation proceeding may. *Id*. In addition to the case law, the State also directs us to Article 1 section 13(b) of the Indiana Constitution, which establishes, in part, that: "[V]ictims of crimes, as defined by law shall have the right to be treated with fairness, dignity, and respect throughout the criminal justice process, . . . to the extent that exercising these rights do not infringe upon the constitutional rights of the accused."

At the close of the State's arguments on its motion to exclude McKinney at K.N.'s deposition, the following exchange took place

> [TRIAL COURT]: Where is the deposition going to be taken?

> [STATE]: If it is without [McKinney], it would be at my office.

> [TRIAL COURT]: Well, let's say it is with McKinney at your office, can we set up some ground rules so that [] McKinney is separated by substantial space. And I am assuming that you will have an officer with you who can report if [] McKinney is in anyway trying to intimidate the witness or make any motions or anything.

> [STATE]: I can, Your Honor, but again, [Dr. Jones and Clevenger] have testified that just the physical presence of [McKinney] is going to cause emotional harm. And [*Jones v. State*, 445 N.E.2d 98, 99 (Ind. 1983),] specifically addresses this, we can take the deposition without [McKinney].

> [TRIAL COURT]: But if the [c]ourt is not going to do closed circuit, frankly isn't the State better off if we have the deposition where the little girl sees [] McKinney at least, you know, as opposed to going into this great big courtroom with all of these people and then she sees []McKinney? Isn't the State better off with that incremental approach?

> [STATE]: My position is no, Your Honor. We would like to take the deposition without [McKinney].

> ****

[TRIAL COURT]: Well, when it comes to face-to-face confrontation, I do think he has to be in the physical presence of the child, but I don't know why we can't set up some safeguards for the child. I am not saying [] McKinney would do anything. I don't mean that at all. But I think we can set up safeguards as we would for anybody in a child situation . . . . what is the length of your table where the deposition would be taken? Ten feet?

[STATE]: Ten feet, yeah.

****

[TRIAL COURT]: . . . All right. I am going to allow McKinney to be present at the deposition at the opposite end of the table at the Prosecuting Attorney's Office with the understanding that the Prosecuting Attorney may have an officer of his choosing, by agreement of []McKinney and his counsel, sitting next to [] McKinney approximately ten feet away from the child in the same room as long as [] McKinney does or says nothing of any nature that would be further stressful or intimidating to the child. Should any such activity take place, the Court orders that the deposition will cease immediately.

(Tr. Vol. II, pp. 54-56). The State now argues that the "trial court's proposed compromise—requiring McKinney to sit at the opposite end of the table and having a court officer nearby to prevent McKinney from engaging in []acts of intimidation—is well meaning but entirely inadequate." (State's Br. p. 15). The State continues that it "will not be less traumatic for K.N. to encounter [McKinney] simply because she is told by adults that [McKinney] will stay at the other end of the conference table." (State's Br. p. 15). Although McKinney concedes that he has no right to be present during the deposition, he, however,

claims that "there is nothing in the law that prohibits the trial court from permitting [his] presence" at the deposition. (Appellees' Br. p. 10).

[16] In the instant case, Dr. Jones and Clevenger testified that K.N. would suffer emotional harm if she testified in the presence of McKinney. Dr. Jones, K.N.'s psychiatrist, strongly "recommended" against any encounter between K.N. and McKinney, and Clevenger additionally testified that it would be "very stressful" and "extremely traumatic" for K.N. to be in the same room with McKinney. (Tr. Vol. II, pp. 28, 36, 41). In addition, we find the procedural safeguards of having McKinney sit at the deposition table, ten feet apart from K.N. requires a level of rationalization about fears that is unrealistic for any eight-year old child, let alone one who is "especially weak psychologically" and whose delayed "emotional maturity approaches that of a toddler or preschooler." (Tr. Vol. II, pp. 22, 31). We agree with the State that it will not be any less traumatic for K.N. to encounter McKinney simply because she is told McKinney will stay at the other end of the conference table.

[17] Directing K.N. to be in the same room with her alleged molester, McKinney, at the pre-trial stage, despite the unequivocal expert evidence that K.N. could potentially experience emotional harm if she testified in the presence of McKinney, was undeniably harmful to K.N—an eight-year-old, who is diagnosed with PTSD and has a deferred development. *See* IND. CONST. art. 1 § 13(b) (stating that "victims of crimes, as defined by *law shall have the right to be treated with fairness, dignity, and respect throughout the criminal justice process*, . . . to the extent that exercising these rights do not infringe upon the constitutional

rights of the accused.") (emphasis added). The trial court's denial of the State's motion to exclude McKinney from K.N.'s deposition is against the logic and effect of the facts and circumstances before the court. Thus, we hold that the trial court abused its discretion.

## II. *Closed Circuit Television*

[18] The State also argues that the trial court abused its discretion in denying its motion to have K.N. testify at trial via two-way closed circuit television. A child who is less than fourteen years of age and is a victim of a sex crime is a protected person. *See* I.C. §35-37-4-6 (b)(2), (c)(1). The Protected Person Statute states in relevant part:

> (c) On the motion of the prosecuting attorney, the court may order that the testimony of a protected person be taken in a room other than the courtroom, and that the questioning of the protected person by the prosecution and the defense be transmitted using a two-way closed circuit television arrangement that:
>
> (1) allows the protected person to see the accused and the trier of fact; and
>
> (2) allows the accused and the trier of fact to see and hear the protected person.
>
> . . . .
>
> (e) The court may not make an order under subsection (c) or (d) unless:

(1) the testimony to be taken is the testimony of a protected person who:

. . . .

(B) is found by the court to be a protected person who should be permitted to testify outside the court room because:

(i) the court finds from the testimony of a psychiatrist, physician, or psychologist and any other evidence that the protected person's testifying in the physical presence of the defendant would cause the protected person to suffer serious emotional harm and the court finds that the protected person could not reasonably communicate in the physical presence of the defendant to the trier of fact;

(ii) . . . ; or

(iii) evidence has been introduced concerning the effect of the protected person's testifying in the physical presence of the defendant, and the court finds that it is more likely than not that the protected person's testifying in the physical presence of the defendant creates a substantial likelihood of emotional or mental harm to the protected person.

I.C. § 35-37-4-8.

[19]　In denying the State's motion to have K.N. testifying via a two-way closed circuit television, the trial court stated, in part:

As to the closed circuit, I think the testimony [of] this little girl is going to be stressed out no matter what we do, and we all feel bad about that. But from the testimony of the experts, there is

very little difference in stress to her whether [] McKinney is present in the [c]ourtroom or she sees him on TV, and she has got to see him on TV. The statute requires that. So, since there is very little difference, I am trying to weigh his right to a fair trial *vis-a-vis* any harm to [K.N.]."

(Tr. Vol. II, p. 57). The State argues that the statutory requirements of Indiana Code section 35-37-4-8 (e)(i) and (iii), by directing us to the testimony of Dr. Jones, K.N.'s psychiatrist, and Clevenger, K.N.'s therapist. Dr. Jones initially testified that K.N. was "behind in almost all of her developmental milestones." (Tr. Vol. II, p. 11). She clarified that K.N.

is not quite mildly intellectually disabled, but she is pretty low functioning cognitively. She has more difficulty learning. She is what used to be called a slow learner. She is at least a year or two behind in gaining all of her academic skills. She tends to over rely on learned, rote methods of dealing with her life and so anything new presents more of a challenge and she can get overwhelmed by new stuff. She doesn't solve problems very effectively. Her use of language is much more what we call concrete, not as uh . . . not expressing an understanding of deeper, more abstract psychological concepts. Her ability to relate information with logical time course markers is a little impaired. So she tends to jump around. Yesterday was three years ago in her mind, and I am exaggerating a little bit, but a year ago might be just yesterday in her mind.

(Tr. Vol. II, p. 11). Dr. Jones has diagnosed K.N. as suffering from "post[-]traumatic stress disorder, oppositional defiant disorder, and attention deficit-hyperactivity disorder." (Tr. Vol. II, p. 9). Dr. Jones pointed out that K.N. is an "exceptionally weak child psychologically. So the risk of harm for her is

greater than [for] a child who hasn't had all of the other traumas and doesn't have the other developmental disabilities." (Tr. Vol. II, p. 31). Dr. Jones noted that during stressful events, K.N. "tends to retreat, hide, get silent. If she is pushed further, she gets disagreeable. She starts to act out or act in a negative way, and she can eventually become aggressive." (Tr. Vol. II, p. 10). Dr. Jones added that "in the presence of the jury and in a room with" McKinney, "there is a decreased likelihood that [K.N.] is going to able to effectively communicate if she is in front [of] a bunch of people because she will be overwhelmed by anxiety and make it almost hard for her to talk and communicate effectively." (Tr. Vol. II, p. 10). Dr. Jones further testified that it would be "much less stressful" for K.N. "to testify via closed circuit TV than it would be in front of an open court." (Tr. Vol. II, p. 10). At the very end of Dr. Jones' testimony, the following exchange occurred between the trial court and Dr. Jones:

> [TRIAL COURT]: By Indiana law, the child has to see [] McKinney, and [] McKinney not only has to see the child, but he has to hear the child. If we set this up by closed circuit television, for that to work, since it is really hard to hear in here, especially an eight-year[-]old child, that television monitor is probably going to be about four feet out in front of you, and that is what she is going to be looking at. What do you think would be more traumatic, looking at the television monitor or looking at [] McKinney over there.

> [DR. JONES]: Looking at [] McKinney in person.

> [TRIAL COURT]: If he is just sitting there.

[DR. JONES]: Correct. You have got to understand, children don't perceive reality in quite the same way that adults do. Television makes it less real.

(Tr. Vol. II, p. 33).

[20] Clevenger, K.N.'s therapist, likewise testified that the likelihood of K.N. suffering emotional harm if she testified in the presence of McKinney was significant. Clevenger stated that the closed-circuit method "may be a little bit less stressful, but it will still be very stressful for [K.N.]" (Tr. Vol. II, p. 36). Clevenger correspondingly stated that during stressful events, K.N. becomes very aggressive, and if confronted with stress in a courtroom full of jurors, she "would likely react very negatively. She would [] probably yell, scream, try to get out of here as much as possible. She would probably be aggressive to whomever is closest to her by hitting, kicking . . ." (Tr. Vol. II, p. 36). Additionally, Clevenger stated that if K.N. testified in open court, it may cause lasting emotional harm to K.N. Clevenger emphasized that irrespective of the venue, it would be "extremely traumatic for [K.N.] to be in the same room" with McKinney. (Tr. Vol. II, p. 41).

[21] In *Brady v. State,* 575 N.E.2d 981, 991-92 (Ind. 1991)*,* our supreme court noted:

> The essential purpose of I.C. [§]35-37-4-8 as a whole is to protect child witnesses and other witnesses who fall within the class of persons labeled "protected persons" from the potentially traumatic experience of having to testify in open court before the person they are accusing. In removing the protected person from the often intimidating and sterile environs of the courtroom to a nearby private room during the trial and interposing a two-way

closed circuit television arrangement which would permit the witness to see the accused and the trier of fact and would allow the accused and the trier of fact to see and hear the witness, the witness's testimony would be facilitated and the threat of emotional or mental harm to the witness would be significantly reduced. In such a [closed-circuit] arrangement, there is no person or body interposed between the witness and the accused and a face-to-face meeting as contemplated by the Constitution occurs. In such manner, the main goal of the statute, reducing the trauma caused by in-court testimony before the accused, can still be achieved in large measure without compromising appellant's constitutional right to meet the witnesses face to face.

[22] There can be no dispute that the State's evidence satisfied the requirements of the Protected Person Statute under subsection (e)(i) and (iii). Here, both Dr. Jones and Clevenger testified that it would be more stressful, therefore, implying that it would be more traumatic for K.N. to testify in the same room with McKinney. Both witnesses indicated that K.N.'s stress would be lessened if she testified via closed circuit television rather than in open court. Dr. Jones further stated that in "orders of magnitude," K.N.'s stress levels would be several times greater than it would be if she testified via closed circuit. (Tr. Vol. II, p. 26). Dr. Jones stated that "there is a decreased likelihood that [K.N.] is going to be able to effectively communicate" at trial since she would be "overwhelmed by anxiety." (Tr. Vol. II, p. 10). Clevenger testified that it would be "significantly less stressful" for K.N. to see McKinney on a television monitor. (Tr. Vol. II, pp. 26, 41).

[23] Nothing in the Protected Person Statute purports an all or nothing proposition. As noted in *Brady*, the purpose of the Protected Person Statute is to protect

child witnesses and other witnesses who fall within the class of persons labeled "protected persons" from the potentially traumatic experience of having to testify in open court before the person they are accusing. *See Brady*, 575 N.E.2d at 989. We recognize that even if the harm to the victim is lessened rather than completely alleviated, the purpose of the statute would be served. Here, the State presented uncontradicted evidence indicating that K.N. would be emotionally harmed if she testified in the presence of McKinney, and more so, she would be unable to effectively communicate in open court. Accordingly, we find that the trial court's assertion that there is very little difference on the emotional stress that K.N. would endure if she testified in the presence of McKinney in the courtroom, is against the logic and effect of the facts and circumstances before the court. Therefore, we conclude the that trial court abused its discretion in denying the State's motion to allow to K.N. testify via closed-circuit television at McKinney's trial.

## CONCLUSION

Based on the foregoing, we conclude that the trial court abused its discretion in denying the State's motion to exclude McKinney from K.N.'s deposition. In addition, under the facts and circumstances of the case, we hold that the trial court abused its discretion in denying the State's request for K.N. to testify via closed circuit television.

Reversed and remanded.

Najam, J. and Bradford, J. concur