**Ronnie MILLER, Appellant/Cross–Appellee–Defendant,**

v.

**STATE of Indiana, Appellee/Cross–Appellant–Plaintiff.**

No. 49A02–0402–CR–140.

Court of Appeals of Indiana.

April 20, 2005.

Transfer Denied July 26, 2005.

---

8. At the time these cases were decided, the treble damages statute was codified at Ind. Code § 34–4–30–1.

Ann M. Sutton, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy At-

torney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Ronnie Miller appeals the trial court's order granting the State's motion to interview and examine him. On cross-appeal, the State challenges a preliminary jury instruction proposed by the trial court. We affirm in part, reverse in part, and remand.

### Issues

Miller presents one issue for our review, which we restate as whether the trial court abused its discretion by ruling that the State may conduct discovery regarding his mental capacity. On cross-appeal, the State presents one issue for our review, which we restate as whether the trial court's proposed preliminary instruction on the issue of Miller's mental retardation would, if presented to the jury, result in an abuse of discretion.

### Facts and Procedural History

On August 4, 1995, seventy-one-year-old apartment manager Anna Pennington was sexually assaulted, beaten, and strangled to death in her Indianapolis office. On August 8, 1995, the State charged Miller with murder, felony murder, and rape. The rape charge was later amended to criminal deviate conduct. On September 5, 1995, the State filed a request for death sentence. On April 20, 1998, Miller filed a petition alleging that he is a mentally retarded individual.[1] On September 23, 1998, following a hearing, the trial court found that Miller is mentally retarded as defined by Indiana Code Section 35–36–9–

2, and consequently, the State's request for death sentence was dismissed. On January 29, 1999, a jury found Miller guilty of all charges, and he was later sentenced to eighty-five years in prison.

On June 26, 2002, our supreme court determined that the trial court's erroneous exclusion of expert opinion testimony affected Miller's substantial rights, and therefore it reversed Miller's convictions and remanded the case for a new trial. *Miller v. State*, 770 N.E.2d 763, 774–75 (Ind.2002). The State does not seek the death penalty in its retrial of Miller. On November 12, 2003, Miller filed a pretrial motion in limine, requesting the court to prohibit the State from "re-litigating the finding of Ronnie Miller's mental retardation" in the second trial. Appellant's App. at 182. On November 19, 2003, the trial court granted Miller's motion.

On December 8, 2003, the State filed two pretrial motions in limine. The trial court denied the State's motion to exclude all testimony regarding Miller's mental retardation. The trial court granted the State's motion to exclude evidence that the trial court found Miller to be mentally retarded for the purpose of determining his eligibility for the death penalty. On December 9, 2003, Miller filed an emergency motion for clarification of the court's prior rulings on the evidentiary issues related to Miller's mental retardation. On January 8, 2004, the trial court held a hearing on the issue. On January 23, 2004, the trial court issued an order that states in pertinent part,

Earlier in the history of this case, the State of Indiana filed the documentation necessary to request the Defendant receive the death penalty. The defense filed a suggestion the Defendant was mentally retarded and, therefore, not el-

---

[1] In Indiana, the death sentence cannot be imposed upon a mentally retarded individual.

*See* Ind.Code §§ 35–36–9–1, *et seq.*

igible to receive the death penalty. Consistent with statutory practice, a hearing was held where both the State and the Defendant had an opportunity to present testimony on the issue of the Defendant's mental status. Given the gravity of such a request, and given the stakes involved, it is assumed each party presented all of the evidence it wished to present. After the hearing the Court determined the defendant was mentally retarded within the meaning of IC 35–36–9–2. Such a finding requires the Court to find the defendant manifested significant sub average intellectual functioning and substantial impairment of adaptive behavior before the full age of 22 years.

At Miller's first trial the State stipulated he was mentally retarded. For purposes of his retrial, the State has withdrawn that stipulation. The court will exercise the discretion allowed by Indiana Rule of Evidence 201. As a consequence, the Court will, at the retrial of this case, read, as part of a Preliminary Instruction, the following:

INSTRUCTION NO. _____

As you are all aware, trials are often preceded by various hearings on motions and petitions. During these pre-trial hearings, the issue of a defendant's guilt or innocence is not considered. At a pre-trial hearing in this case the Court determined that Mr. Miller was mentally retarded. This determination was made after the Court heard from six mental health professionals. Each of these professionals was well qualified by both education and experience. Five of these professionals possessed a Ph.D. and the sixth was a medical doctor specializing in psychiatry.

A determination of mental retardation actually requires three "findings." The first finding is that the subject of the inquiry has sub-average intelligence inasmuch as his intelligence quotient—IQ—as measured by qualified professionals using appropriate testing techniques, is below 75. The second finding is that the subject of the inquiry suffers a substantial impairment of his adaptive behavior. (Adaptive behavior is determined by using standardized test scores and/or independent sources such as teacher recommendations, performance on tests and everyday observations. In this case the Court heard evidence regarding numerous properly determined standardized test scores and the Court also heard evidence from three people who knew Mr. Miller's social and personal history.) To satisfy the third finding, the court must determine that the first two findings existed before Mr. Miller reached the full age of 22 years.

In PRELIMINARY INSTRUCTION NO. 10 you are told that you are the judges of the law and the facts. In part, that instruction is telling you that you have no obligation to adopt, accept or feel bound by the Court's mental retardation determination. You may, if you choose, accept the Court's finding. You are to consider the Court's finding in light of all other evidence introduced at trial.

*Id.* at 263–65. On February 4, 2004, the trial court granted the State's motion to interview and examine Miller. In this interlocutory appeal, Miller challenges the trial court's order allowing the State to conduct discovery regarding his mental capacity. On cross-appeal, the State challenges the trial court's proposed preliminary jury instruction.

### Discussion and Decision

#### I. *State's Examination of Miller's Mental Capacity*

██ Miller argues that the trial court's determination of his mental retar-

dation prior to his first trial bars the State from conducting discovery and presenting evidence on the issue in the second trial and that therefore the trial court's order allowing the State to interview and examine him is improper.[2] Our standard of review is well-settled. A trial court has broad discretion with regard to rulings on discovery matters based upon the court's duties to promote discovery of the truth and to guide and control the proceedings. *Hooper v. State,* 779 N.E.2d 596, 599 (Ind. Ct.App.2002). Therefore, such rulings will be overturned only for an abuse of discretion. *Hall v. State,* 760 N.E.2d 688, 689 (Ind.Ct.App.2002), *trans. denied.* An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before the court. *Id.* at 689–90.

Prior to Miller's first trial, the trial court issued an order stating in pertinent part,

9. It is therefore the conclusion of this Court by clear and convincing evidence that Ronnie Miller has significantly sub-average intellectual functioning and has substantial impairment of adaptive behavior all of which manifested before Ronnie Miller reached twenty-two (22) years of age and that therefore Ronnie Miller is mentally retarded within the meaning of I.C. 35–36–9–2.

It is therefore ORDERED that the part of the State's charging instrument filed under I.C. 35–50–2–9(a) that seeks a death sentence against Ronnie Miller be dismissed.

Appellant's App. at 658. Clearly, the trial court's finding was limited in its context.

The trial court specifically determined that Miller is mentally retarded "within the meaning of I.C. 35–36–9–2," a statute that applies only to the issue of a defendant's eligibility for the death penalty. *Id.*

■ The State argues, and we agree, that the trial court's prior finding of Miller's mental retardation does not preclude the parties from presenting evidence of his mental capacity for another purpose at the second trial, namely to assist the jury in determining the voluntariness of his statement to police. When Miller heard that police sought him for questioning related to the murder of Anna Pennington, he voluntarily went to the police station to "get things cleared up." *Miller,* 770 N.E.2d at 768 (citation omitted). Police advised Miller of his *Miranda* rights and then interrogated him using techniques such as the misstatement and exaggeration of information—for example, an officer presented Miller with a fabricated fingerprint card and stated that his fingerprints had been found at the murder scene when in fact the fingerprints recovered from the scene had not yet been identified. *Id.* After several hours of questioning, Miller made incriminating statements about his involvement in Pennington's death, and he was placed under arrest. *Id.*

While the supreme court upheld the trial court's determination that Miller's statement to police was admissible because he freely, voluntarily, and intelligently waived his *Miranda* rights, the Court noted that Miller is still free to challenge the state-

---

2. Miller frames his argument in terms of the "law of the case" doctrine, arguing that the trial court's determination of Miller's mental retardation prior to his first trial and the State's failure to dispute that determination in the ensuing appeal establish the finding as part of the law of the case and preclude it from being relitigated at any subsequent stage. *See Otte v. Otte,* 655 N.E.2d 76, 83 (Ind.Ct.App.1995). Because the finding of Miller's mental retardation was not even at issue in the first appeal, the law of the case doctrine is inapplicable. Rather, we will review this issue for what it is, a discovery matter.

ment's weight and credibility. *See id.* at 770–72.

The trial court must make a preliminary factual determination of voluntariness when assessing the statement's admissibility. The jury, however, remains the final arbiter of all factual issues under Article 1, Section 19 of the Indiana Constitution. Even if the court preliminarily determines that the statement is voluntary and admits it for the jury's consideration, then the defendant is still entitled to dispute the voluntariness of the statement once it is presented to the jury. Although the court has previously determined voluntariness in connection with the statement's admissibility, the jury may find that the statement was involuntarily given. If the jury makes such a determination, then it should give the statement no weight in deciding the defendant's guilt or innocence.

*Id.* at 772–73 (citation omitted). Our supreme court reversed Miller's convictions because the trial court improperly excluded his expert psychologist's opinion testimony regarding the psychological effects of police interrogation techniques, including the effects upon mentally retarded individuals and the possibility of false confessions. *Id.* at 773–74. The supreme court determined that such testimony would have assisted the jury in determining the voluntariness of Miller's statement to police. *Id.*

In sum, our supreme court found that Miller's expert opinion testimony regarding, *inter alia,* the effects of police interrogation upon mentally retarded individuals is admissible at the retrial of this case to assist the jury in determining his statement's weight and credibility. *Id.* Therefore, the State must also be permitted to present evidence on the issue of Miller's mental capacity for the same purpose.

*See* Ind. Trial Rule 43(D); Ind.Crim. Rule 21. Thus we find no abuse of discretion, and we affirm the trial court's order granting the State's motion to interview and examine Miller.

## II. Trial Court's Proposed Jury Instruction

▇▇▇▇ The State contends that the trial court's proposed jury instruction regarding its prior determination of Miller's mental retardation is irrelevant and misleading because the issue that originally prompted the determination, the State's request for death sentence, is not an issue in the second trial.

Jury instructions are within the discretion of the trial court and we will not reverse unless there is an abuse of that discretion. The purpose of the instructions is to inform the jury of the law applicable to the facts of the particular case. To be erroneous, instructions must either as a whole misstate the law or otherwise mislead the jury.

*Clark v. State,* 732 N.E.2d 1225, 1230 (Ind. Ct.App.2000) (citations omitted).

As discussed above, the trial court's determination of Miller's mental retardation was made following a hearing, the sole purpose of which was to determine whether he was mentally retarded as defined by Indiana Code Section 35–36–9–3 and thus ineligible for the death penalty. In its proposed preliminary jury instruction, the trial court explains that "[a]t a pre-trial hearing in this case the Court determined that Mr. Miller was mentally retarded." Appellant's App. at 264. The instruction also sets forth three findings that were made to support the court's determination of mental retardation but does not explain that the source of these findings is Indiana Code Section 35–36–9–3. In fact, the instruction provides no indication of the very limited context of the trial court's finding of mental retardation. Because the State

has not pursued a death sentence in Miller's second trial, the court's prior determination of mental retardation is irrelevant and should not be permitted to influence the jury.

The law stated in the proposed jury instruction—the requirements for a determination of mental retardation under Indiana Code Section 35–36–9–3—is simply not applicable to Miller's case, because the State does not seek the death sentence. As our supreme court stated in its opinion on Miller's appeal, the jury is the "final arbiter of all factual issues." *Miller*, 770 N.E.2d at 772. The existence and severity of Miller's mental retardation is a factual issue for the jury to decide. *See Brown v. State*, 448 N.E.2d 10, 19 (Ind. 1983) (concluding that defendant's mental capacity is a factual issue for the jury to resolve). The trial court's proposed instruction serves no purpose other than to risk misleading the jury by suggesting a presumption of Miller's mental retardation, and thus it would be an abuse of discretion. *See Clark*, 732 N.E.2d at 1230.

In sum, we affirm the trial court's order granting the State's motion to interview and examine Miller, we reverse the trial court's order proposing a preliminary instruction about its determination of Miller's mental retardation, and we remand for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

RILEY, J., and ROBB, J., concur.