

I N  T H E

# Court of Appeals of Indiana

Royce A. Pruitt,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

Sep 16 2024, 9:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

September 16, 2024

Court of Appeals Case No.
23A-CR-2404

Appeal from the Marion Superior Court

The Honorable Angela Davis, Judge

Trial Court Cause No.
49D27-2106-F1-19330

**Opinion by Judge Bradford**
Judges Crone and Tavitas concur.

**Bradford, Judge.**

## Case Summary

[1] After an incident involving a minor, K.F., the State charged Royce Pruitt with Level 1 felony child molesting, two counts of Level 5 felony criminal confinement, and two counts of Level 5 felony kidnapping. Prior to trial, Pruitt filed non-party requests for production ("RFP") for Indiana Department of Child Services ("DCS") records. The State moved to quash Pruitt's RFP, which the trial court granted. The trial court conducted a hearing, at which it entertained Pruitt's request to reconsider his RFP and again denied it. After a jury trial, a jury found Pruitt guilty of Level 1 felony child molesting and the trial court sentenced him to twenty-five years of incarceration, with five years suspended and three on sex-offender probation. Pruitt argues that the trial court abused its discretion by quashing his RFP and not conducting an *in-camera* review of the documents. We disagree and affirm.

## Facts and Procedural History

[2] On June 21, 2021, then thirteen-year-old K.F. was walking home from her boyfriend's house in Indianapolis when she noticed the driver of a passing vehicle looking at her. The driver, later determined to be Pruitt, did a U-turn and approached K.F. as she reached the intersection. Pruitt asked K.F. if she "want[ed] to make some money" and told her that "he was trying to get a nut off real quick[,]" which invitation she repeatedly refused. Tr. Vol. III pp. 23, 24. As K.F. started to walk away, Pruitt got out of his car, grabbed K.F.'s arm,

and put her in the passenger seat. Pruitt then drove to an abandoned store and parked behind it.

[3] When parked, Pruitt exited the vehicle and told K.F. to move to the driver's seat. Pruitt removed K.F.'s jacket and bra and pulled her pants down. Pruitt then "put his penis in [K.F.'s] vagina." Tr. Vol. III p. 38. After Pruitt stopped, he told K.F. "to perform oral on him[,]" to which K.F. did not respond. Tr. Vol. III p. 39. At that point, Pruitt said "never mind" and "drove off" with K.F.'s telephone, jacket, and bra still inside his vehicle. Tr. Vol. III p. 39.

[4] K.F., "crying" and "hysterical[,]" walked to a nearby community center where she asked for help and explained that she had been sexually assaulted. Tr. Vol. II p. 192. Staff at the community center called the police. When police arrived, K.F. gave them her Apple login credentials so that officers could use the "Find my iPhone" function to locate her iPhone. Based on K.F.'s iPhone's location and her description of Pruitt's vehicle, police located and arrested Pruitt. K.F.'s bra, jacket, and iPhone were found in Pruitt's vehicle.

[5] At the police station, Pruitt claimed to be homosexual, denied touching any girl, and claimed not to have even talked to a woman that day. When it came to K.F.'s possessions, Pruitt claimed that he had found them on "the side of the road" before putting them in his car. Tr. Vol. III p. 221. At his subsequent trial, Pruitt admitted that he had lied to police because he was "trying to separate himself from the incident[.]" Tr. Vol. III p. 220. Meanwhile, a sexual-

assault nurse examined K.F., in part using an internal vaginal swab. A test of the swab indicated the presence of a DNA profile consistent with Pruitt's DNA.

[6] On June 24, 2021, the State charged Pruitt with Level 1 felony child molesting, two counts of Level 5 felony criminal confinement, and two counts of Level 5 felony kidnapping. Before trial, Pruitt sought RFP for certain DCS records, related to himself and K.F. In January of 2022, the State moved to quash Pruitt's RFP, which motion the trial court granted. At a subsequent hearing, Pruitt narrowed his RFP from all of K.F.'s DCS records to records from February 3, 2020; July 12, 2015; and January 15, 2015. Pruitt requested these records on grounds that they contained similar allegations as this case; however, the trial court again denied Pruitt's RFP.

[7] In July of 2023, the trial court conducted a jury trial, at which Pruitt testified. Pruitt testified that he had had sex with K.F., that she had solicited him for sex, and she had claimed to be eighteen years old. Additionally, Pruitt claimed that after they had had consensual sex, K.F. admitted that she was sixteen years old and that is why he quickly went home. The jury found Pruitt guilty of Level 1 felony child molesting, for which the trial court sentenced him to twenty-five years of incarceration, with five years suspended and three on sex-offender probation.

## Discussion and Decision

[8] Trial courts exercise broad discretion when ruling on discovery issues, and we review those decisions for an abuse of that discretion. *Beville v. State*, 71 N.E.3d

13, 18 (Ind. 2017). A trial court abuses its discretion when it makes a decision that is clearly against the logic and effects of the facts and circumstances before it. *Heaton v. State*, 984 N.E.2d 614, 616 (Ind. 2013). "Due to the fact-sensitive nature of discovery matters, the trial court's ruling is cloaked in a strong presumption of correctness on appeal." *Moore v. State*, 839 N.E.2d 178, 182 (Ind. Ct. App. 2005), *trans. denied*.

[9] Pruitt argues that the trial court abused its discretion in quashing his RFP for the DCS records and failing to conduct an *in-camera* review of the reports to determine their relevance. In making his argument, Pruitt focuses his analysis on the three-part test for the discovery of non-privileged information:

> (1) there must be a sufficient designation of the items sought to be discovered (particularity); (2) the items requested must be material to the defense (relevance); and (3) if the particularity and materiality requirements are met, the trial court must grant the request unless there is a showing of 'paramount interest' in non-disclosure.

*In re WTHR-TV*, 693 N.E.2d 1, 6 (Ind. 1998). For its part, the State argues that Pruitt was not entitled to the DCS records because they were privileged, and no statutory exception applies. We agree with the State and conclude that the trial court did not abuse its discretion in denying Pruitt's RFP.

[10] In his RFP, Pruitt sought

> (1) A true and complete copy of the entire DCS file for Royce Pruitt, date of birth: 5/30/1993, and [K.F.], date of birth: [X/X/XXXX].

(2) These records are requested in true form, including, but not limited to 310 and 311 reports, all evaluations, records, notes, reports, updates, memoranda, recorded and/or videotaped statements, transcripts, other papers, appointment notes, Family Case Manager (FCM) investigation notes or other data compilations in whatever form they are kept.

Appellant's App. Vol. II pp. 101–03.  Our legislature, however, has created a privilege applicable to these records.  Indiana Code section 31-33-18-1 provides that

> [e]xcept as provided in section 1.5 of this chapter, the following are confidential:
>
>> (1) Reports made under this article (or IC 31-6-11 before its repeal).
>>
>> (2) Any other information, documents, reports, pictures, videos, images, or recordings obtained, possessed, produced, or created by:
>>
>>> (A) the division of family resources;
>>>
>>> (B) the local office;
>>>
>>> (C) the department; or
>>>
>>> (D) the department of child services ombudsman established by IC 4-13-19-3;
>>
>> concerning a child or family with whom the department has received a report or referral or has been involved with during any stage of the department's investigation, including post-assessment or post-adoption activity.

Reports, like those Pruitt requests, then, have been determined by statute to be privileged and confidential.  *See In re K.B.*, 894 N.E.2d 1013, 1015–16 (Ind. Ct. App. 2008).  We "are bound by the General Assembly's determination of

whether a particular interest is sufficient enough to justify the creation of a privilege and the scope of the protection provided under that privilege." *In re Crisis Connection, Inc.*, 949 N.E.2d 789, 793 (Ind. 2011).

[11] The General Assembly has provided exceptions to this confidentiality in Indiana Code section 31-33-18-2. Pruitt claims that one of those exceptions applies: A court may access such records "upon the court's finding that access to the records may be necessary for the determination of an issue before the court" but that "access is limited to in camera inspection unless the court determines that public disclosure of the […] records is necessary for the resolution of an issue then pending before the court." Indiana Code § 31-33-18-2(9). We, however, disagree.

[12] The trial court held a hearing to reconsider the State's motion to quash Pruitt's RFP. At that hearing, Pruitt narrowed his RFP to certain dates and explained to the trial court that he was requesting these records because they contained allegations that were "similar to the allegations in this case." Tr. Vol. II pp. 60–61. The trial court recognized that it could review the records *in camera*; however, it concluded that it would affirm its grant of the State's motion to quash Pruitt's RFP because there were "no allegations to say that [Pruitt] knew [K.H.]" before this incident. Tr. Vol. II p. 62. Moreover, as the State notes, the RFP seeks records from 2020 and 2015, when K.F. was twelve and seven years old, respectively. Given K.F.'s tender age at the time these reports were generated, Pruitt's claim that K.F. had previously lied about her age in previous sexual encounters, without more, apparently failed to convince the trial court

that an *in-camera* review was necessary. In other words, the trial court concluded that there was no "issue before the court" which the DCS records were needed to decide, rendering Pruitt's proposed exception inapplicable. Ind. Code § 31-33-18-2(9).

[13] A trial court's decision to review documents *in camera* to determine materiality or the validity of any objections "is generally within the trial court's discretion." *In re WTHR-TV*, 693 N.E.2d at 8. Because these DCS reports are privileged, and no statutory exception mandates their disclosure, we need not proceed with the three-step analysis for the discovery of non-privileged information. *See Friend v. State*, 134 N.E.3d 441, 446 (Ind. Ct. App. 2019) (concluding that, when requested information is privileged and no statutorily-defined exception applies for its disclosure, "we may not proceed with" the test for the discovery of non-privileged information), *trans. denied*. In short, given that the DCS reports are privileged, and Pruitt's failure to show they were necessary for a determination of an issue before the court, as discussed above, we cannot say that the trial court abused its discretion in denying Pruitt's RFP and concluding that it did not need to conduct an *in-camera* review of the DCS reports. *See Moore*, 839 N.E.2d 182.

[14] Additionally, Pruitt argues that because the State did not argue at trial that the DCS records he had requested were privileged, that argument is now waived on appeal. We disagree. While an appellant may not present an argument on appeal that was not presented first to the trial court, a party who prevailed at trial "may defend the trial court's ruling on any grounds, including grounds not

raised at trial." *Citimortgage v. Barabas*, 975 N.E.2d 805, 813 (Ind. 2012). Moreover, "we will affirm a judgment on any theory supported by the record." *Ind. Bur. of Motor Vehicles v. Gurtner*, 27 N.E.3d 306, 312 (Ind. Ct. App. 2015). Therefore, the State's argument that these DCS reports are protected by statutory privilege is not waived.

[15] The judgment of the trial court is affirmed.

Crone, J., and Tavitas, J., concur.

ATTORNEY FOR APPELLANT

Timothy J. O'Connor
O'Connor & Auersch
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Kathy Bradley
Deputy Attorney General
Indianapolis, Indiana